IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AGUSTIN SANTOS RAMIREZ, and
JOSE GUADALUPE SALAZAR GONZALEZ,

      Petitioners,

          v.                                      Case No. 1:25-cv-01008-KWR-JMR

PAMELA BONDI, *in her official capacity as*
*Attorney General of the United States*,
KRISTI NOEM, *in her official capacity as Secretary*
*of the Department of Homeland Security*,
UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
TODD LYONS, *in his official capacity as Acting Director of*
*U.S. Immigration and Customs Enforcement*,
MARISA FLORES, *Field Office Director of Enforcement and Removal Operations*,
*El Paso Field Office*
GEORGE DEDOS, *Warden of Cibola County Correctional Center*,

      Respondents.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioners' Verified Petition for Writ of Habeas Corpus (**Doc. 1**) and Respondents' Motion to Dismiss (**Doc. 10**). Having reviewed the parties' pleadings, briefing, and the relevant law, the Court finds that the Petition is well-taken and therefore is **GRANTED in part.** Respondents' Motion to Dismiss (Doc. 10) is **DENIED.** The Court orders Respondents to hold individualized bond hearings for each petitioner within **seven (7) days** of the entry of this order.[1]

### BACKGROUND

---

[1] As to Petitioner Santos Ramirez, Respondents may immediately release him on the bond imposed in the alternative by the immigration court, in lieu of holding another bond hearing

Petitioners are in the custody of Respondents at the Cibola County Correctional Center. Pet. ¶ 1, Doc. 1. Respondents initiated removal proceedings and charged Petitioners with entering the United States without admission or inspection. *Id.* ¶ 2. Both Petitioners nominally received bond hearings. But at those hearings, the immigration judges concluded that § 1225(b)(2) applied, and they lacked authority or jurisdiction to release Petitioners on bond. Thus, bond hearings pursuant to § 1226(a) did not occur. Petitioners request the Court to release them from custody immediately or, alternatively, order a bond hearing under § 1226(a) within seven days. Pet. at 16.

Petitioner Agustin Santos Ramirez has resided in the United States since 2003 and has lived in Santa Ana, California since 2015. Pet. ¶ 43, Doc. 1. On June 21, 2025, Petitioner Santos Ramirez was arrested by ICE outside of a Home Depot in Santa Ana, California. *Id.* ¶ 44. DHS placed Petitioner Santos Ramirez in removal proceedings pursuant to 8 U.S.C. § 1229a. *Id.* ¶ 45. ICE charged Petitioner with being inadmissible under § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. *Id.* He has no criminal history aside from a driving ticket. *Id.* ¶ 46.

Petitioner Jose Guadalupe Salazar Gonzalez has resided in the United States since 2008 and has lived in Santa Ana, California since 2016. *Id.* ¶ 49. On June 21, 2025, he was arrested in the parking lot of a Home Depot while buying supplies for work. *Id.* ¶ 50. DHS placed Petitioner Salazar Gonzalez in removal proceedings pursuant to 8 U.S.C. § 1229a. *Id.* ¶ 51. ICE charged him with being inadmissible under § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. *Id.*

On September 5, 2025, the Board of Immigration Appeals issued a decision holding that immigration judges lacked authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado,* 29 I & N Dec. 216 (BIA

2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission.").

Initially, Respondents issued custody determinations requiring each petitioner to stay in custody without an opportunity to post bond or otherwise be released. *See, e.g.,* Pet. ¶ 53. Petitioner Salazar Gonzalez requested a bond redetermination, but the immigration judge found he was unable to consider the bond request as he lacked authority or jurisdiction. *Id.* ¶ 55.

As to Petitioner Santos Ramirez, the immigration court denied bond on December 31, 2025, asserting that it lacks authority or jurisdiction to do so. The immigration court alternatively ruled that, if it had authority, it would set bond in the amount of $10,000 as he is not a danger or flight risk. Doc. 22 at 1-2.

As to Petitioner Salazar Gonzalez, the immigration court again denied his bond request on December 16, 2025, asserting it lacked authority or jurisdiction to do so. Doc. 22 at 2. Petitioner Salazar Gonzalez had an individual merits hearing for his immigration case. *Id.* The immigration court denied relief and granted voluntary departure. *Id.* He has until January 20, 2026 to appeal. *Id.*

The Court set a briefing scheduled on the Motion to Dismiss and directed the parties to state whether the Court may grant or deny the Petition based on the briefing on the Motion to Dismiss, or whether it needed to order Respondents to file an answer. Doc. 13 at 1. The parties agreed that the Court could grant or deny the Petition on the current briefing. The Court also ordered the parties to alert the Court if any immigration hearing would affect the Court's ruling. *Id.*

In sum, Petitioners have remained in federal immigration custody without an opportunity to post bond or request a conditional release because their detention has been classified as

3

mandatory under 8 U.S.C. § 1225(b)(2)(A). Petitioners request that the Court issue a writ of habeas corpus requiring Respondents to (1) release Petitioners or (2) conduct a bond hearing within seven days. Pet. at 16.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## DISCUSSION

Petitioners assert they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). They argue that they are being improperly detained pursuant to 8 U.S.C. § 1225(b)(2)(A), and that they are instead entitled to release or an immediate bond hearing under 8 U.S.C. § 1226(a). As explained below, Petitioners, who have lived in the United States for decades, are subject to the discretionary detention provisions of § 1226(a) and are therefore entitled to a bond hearing before an immigration judge.

### I.   The Court has jurisdiction over this matter.

Respondents initially moved to dismiss the Petition for lack of jurisdiction. In a reply, Respondents withdrew their request, in effect admitting that this Court has jurisdiction over this case. Doc. 16 at 2.

It is undisputed that the Court has jurisdiction over the narrow detention issues in this habeas petition. "[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Demore v. Kim*, 538 U.S. 510, 517 (2003). And Congress must be "particularly clear" that it intends for a provision to preclude habeas review. *Id.* As here, "[c]hallenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d at 1310 (citing *Zadvydas*, 533 U.S. at 687-88). The Court agrees with the parties that it has jurisdiction over the narrow detention issue in the Petition, *i.e.*, determining whether mandatory detention under § 1225(b)(2)(A) applies or discretionary detention under § 1226(a) applies pending a decision on Petitioners' removal.

II. **Whether mandatory detention under § 1225(b)(2)(A) or discretionary detention under § 1226(a) applies.**

At issue is whether § 1225(b)(2)(A) or § 1226(a) governs Petitioners' detention while a decision on their removal is pending. Mandatory detention under section 1225(b)(2)(A) applies to noncitizens "seeking admission" into the United States. Petitioners assert that they are entitled to a bond hearing or immediate release pursuant to § 1226(a), as they have resided in the United States for years or decades and are not "seeking admission" into the United States. Despite this statutory language, Respondents argue that the mandatory detention provision under § 1225(b)(2)(A) applies, as that provision covers not only those who present themselves at the border, but any noncitizen who is present in the United States without admission, pending a decision on removal. *See, e.g., Matter of Yajure Hurtado,* 29 I & N Dec. 216 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). As explained below, the statutory phrase

"seeking admission" cannot be interpreted to apply to Petitioners, who have lived in the United States for years or decades. Therefore, Petitioners are entitled to a bond hearing under § 1226(a).

In construing the statute at issue, the Court begins with its plain text. *See Chickasaw Nation v. United States,* 208 F.3d 871, 876 (10th Cir. 2000). "If the terms of the statute are clear and unambiguous, they are controlling absent rare and exceptional circumstances." *Id*. In ascertaining the meaning of the text, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co.,* 585 F.3d 1376, 1381 (10th Cir. 2009) ("We also take into account the broader context of the statute as a whole when ascertaining the meaning of a particular provision."). The Court also considers traditional canons of statutory interpretation. *Conrad,* 585 F.3d at 1381; *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011). Generally, the Court only considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, if statutory language is ambiguous. *See, e.g., United States v. Husted,* 545 F.3d 1240, 1247 (10th Cir. 2008).

The Immigration and Nationality Act ("INA") generally contemplates two detention regimes for noncitizens pending a decision on removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). The first detention regime provides that when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted," the noncitizen "shall be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A). This provision mandates detention and does not expressly afford a bond hearing. *Id.* Section 1225 has exceptions to mandatory detention, which are not relevant here. The second detention regime authorizes the arrest and detention "on a warrant issued by the Attorney General" of noncitizens "pending a decision on whether [they are] to be removed." 8 U.S.C. § 1226(a). Section 1226(a) expressly authorizes the

6

Attorney General to detain the arrested noncitizen, or release them on bond or conditional parole. *Id.* Section 1226(c) has certain exceptions which mandate detention. For example, mandatory detention under § 1226(c) applies to a noncitizen who is (1) "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General" and (2) "charged with, is arrested for, is convicted of, admits having committed" certain criminal acts. § 1226(c)(1)(E).

Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289 (emphasis added), *quoted in Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (concluding that § 1226(a) applied to noncitizens already present in country who were not admitted).

Thus, for § 1225(b)(2)(A)'s mandatory detention proceedings to apply, the Court must find as follows: (1) the noncitizen is "an applicant for admission", (2) who is "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted."

Respondents argue that Petitioners are applicants for admission and the § 1225(b)(2)(A) mandatory detention provisions apply. Petitioners are likely applicants for admission under the statute. Here, an "applicant for admission" is defined as "an alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Because Petitioners are present in the United States and have not been admitted, they may be deemed by the statute to be "applicant[s] for admission," satisfying the first criteria of § 1225(b)(2)(A).

7

But the detention provision under § 1225(b)(2)(A) applies only to noncitizens "seeking admission." § 1225(b)(2)(A). As explained below, under the plain meaning of the statute, Petitioners, who have been living in the United States for decades, are not "seeking admission." *Id.* "Admission" is defined as "the lawful entry of the noncitizen into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). The term "entry" is undefined in the statute. And Respondents do not argue that "entry" has any technical meaning in the statutory provisions at issue. Assuming it has no technical meaning, it can be given its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (internal quotation marks omitted); *United States v. Santos*, 553 U.S. 507, 511 (2008) ("When a term is undefined, we give it its ordinary meaning.").

"Entry" most commonly means "[t]he action or an act of entering a place, area, building, etc." Entry, Oxford English Dictionary (2018); Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/entry (last visited January 12, 2026) ("the act of entering"); Entry, Black's Law Dictionary (12th ed. 2024) ("*Immigration.* Any entrance of an alien into the United States, whether voluntary or involuntary."). "Seeking" in this context most naturally means trying to obtain something or trying to bring about or effect. Seek, Oxford English Dictionary Online (2018). "Seeking" is also in the present participle form, which expresses present action. Present Participle, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/present%20participle (last visited January 12, 2026); *see also Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. Aug. 29, 2025) (The use the present participle in § 1225(b)(2)(A) "implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection."). Taken together, the "seeking admission" phrase in § 1225(b)(2)(A) applies to noncitizens who are trying to lawfully and

8

physically enter the country. It does not apply to noncitizens who have lived in the United States for years or decades and are not seeking lawful entry into the United States.[2]

Respondents appear to suggest that all "applicants for admission" are deemed to be "seeking admission." Respondents essentially interpret "seeking admission" as coterminous with "applicants for admission." Respondents' construction "would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction." *Castanon-Nava v. U.S. Dep't of Homeland Sec.,* 161 F.4th 1048, 1061 (7th Cir. 2025), *citing United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."). "If an interpretation of one provision 'would render another provision superfluous,' courts presume that interpretation is incorrect." *Castanon-Nava,* 161 F.4th at 1061 (quoting in part *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010)). "And this presumption is 'strongest when an interpretation would render superfluous another part of the same statutory scheme,' as would be the case here." *Castanon-Nava,* 161 F.4th at 1061 (*quoting in part Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)). Therefore, the Court declines to interpret "seeking admission" in a manner wholly synonymous with "applicant for admission."

---

[2] The Court's understanding of the plain, ordinary meaning of the word "entry" in this statute, *i.e.*, that entry means the physical entry into the country, accords with how it is understood and used by the United States Supreme Court in the immigration context. The word "entry" has long been used to refer to physically going into country, regardless of whether they are legally in the United States. *See, e.g., Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

Rather than the two phrases being synonymous, the statutory language elsewhere in § 1225 appears to distinguish the phrase "applicants for admission" from the phrase "seeking admission," suggesting that these phrases have separate meanings. Section § 1225(a)(3) provides that "All aliens … *who are applicants for admission or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* (emphasis added). The word "or" in its "ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings." *Loughrin v. United States*, 573 U.S. 351, 357 (2014) (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)). Taken together, "or otherwise" is "used to refer to something that is different from something already mentioned." *Or otherwise*, Merriam Webster Online, https://www.merriam-webster.com/dictionary/or%20otherwise (last visited January 12, 2026). If "applicants for admission" had the same meaning as "seeking admission", there would be no need to repeat the phrase "seeking admission" or use the phrase "or otherwise." Thus, it is clear that the phrases "applicants for admission" and "seeking admission" do not have the same meaning.

Respondents' interpretation would also render superfluous recent amendments to § 1226(c). Section 1226(c)(1)(E) mandates detention for noncitizens who are implicated in certain crimes. Section 1226(c)(1)(E), which was added to the statute in 2025 by the Laken Riley Act, mandates detention for any noncitizen (1) who is inadmissible under § 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled," *and* (2) who "is charged with, arrested for, convicted of, or admits" to committing certain crimes. 8 U.S.C. § 1226(c)(1)(E). Under Respondents' interpretation, all noncitizen who are present in the country without being admitted or paroled must already be mandatorily detained under § 1225(b)(2)(A), rendering the recent amendment superfluous. Generally, courts "do not lightly" find that Congress adopted "two

10

separate clauses in the same law to perform the same work." *United States v. Taylor*, 596 U.S. 845, 857 (2022).

Moreover, the context of the statute surrounding § 1225(b)(2)(A) is clear that it generally applies to arriving noncitizens, not those already present for years. *See King v. Burwell*, 576 U.S. 473, 486 (2015) (explaining that courts "must read the words in their context and with a view to their place in the overall statutory scheme" (citation and internal quotation marks omitted)); *see also Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290, (2010) ("Courts have a 'duty to construe statutes, not isolated provisions.' " (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 568, 1 (1995))). Section 1225's provisions generally deal with noncitizens arriving in the United States, not those already present for years or decades.

The Court's interpretation of § 1225(b)(2)(A) is consistent with the decisions of multiple courts, which have found that under its ordinary meaning, a person who has been present in the United States is not "seeking admission" and therefore not subject to mandatory detention under § 1225(b)(2)(A). *See, e.g., Castanon-Nava v. U.S. Dep't of Homeland Sec.,* 161 F.4th 1048, 1061 (7th Cir. 2025); *see also Barco Mercado v. Francis,* No. 25-CV-6582 (LAK), 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (collecting cases in Appendix A); *Pu Sacvin v. Ybarra*, No. 2:25-CV-1031-KG, 2025 WL 3187432, at *3 (D. N.M. Nov. 14, 2025) ("Noncitizens seeking admission are those who have not effected an entry into the United States.") (quotation marks omitted).

The Court's interpretation is also consistent with the United States Supreme Court's dicta. In *Jennings*, the Supreme Court explained that Section 1225(b) "applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings,* 583 U.S. at 297. In contrast, the Court explained that Section 1226 "applies to aliens already present in the United States." *Id.* at 303. The Court further noted that "Section 1226(a) creates a

11

default rule for those aliens [present in the United States] by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also "permits the Attorney General to release those aliens on bond." *Id.* The *Jenning* Court's description of the relationship between §§ 1225 and 1226 is consistent with the Court's conclusion.

Respondents argue that the Court's interpretation would treat noncitizens unlawfully present in the United States preferentially to noncitizens who arrive at the border. They imply this would be unfair or would reward noncitizens who pass the border without inspection. Because the statutory language is unambiguous, the Court's task is to ascertain its plain meaning, and it generally should not address this extra-textual consideration. *See McGraw v. Barnhart*, 450 F.3d 493, 499 (10th Cir. 2006). Alternatively, this seemingly different treatment of those who have resided unlawfully in the United States is well-supported in case law. "The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693; *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

Respondents cite to a decision by the BIA holding that § 1225(b)(2)(A) applies to noncitizens present in the country who were not inspected at the border. *See Matter of Yajure Hurtado,* 29 I & N Dec. 216 (BIA 2025). *Hurtado* is not binding on this court, and the agency's interpretation carries only the "power to persuade." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024). As explained above, the Court does not find *Hurtado* persuasive.

Here, applying the above statutory interpretation to the facts of this case, it is clear that Petitioners were not "seeking admission" under § 1225(b)(2)(A). They have lived in the United

States for decades. And neither the Petition nor the Respondent's Motion identified any facts to suggest Petitioners were "seeking admission", i.e., lawful physical entry into the country, at the time of their arrest. Therefore, it is clear that the detention provision under § 1225(b)(2)(A) do not apply to Petitioners.

Instead, Section 1226(a), the default, more general detention provision pending a decision on removal, governs Petitioners' detention. "Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal." *Jennings*, 583 U.S. at 288. Thus, the Court grants in part the Petition.

### III. **The Court finds that a bond hearing, rather than immediate release, is the appropriate remedy.**

Petitioners request immediate release or a bond hearing before the immigration court. Pet. at 16, Doc. 1. Respondents argue that only a bond hearing under § 1226 is proper.

The Court concludes that in this case it should order a bond hearing rather than immediate release, as ordering immediate release would result in the Court taking away Respondents' discretionary decision. Section 1226(a) gives the Respondents discretion to either detain a noncitizen, release the noncitizen on bond, or place them on parole. Generally, a release or bond decision is discretionary. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). Even if the Court had authority to order Petitioners' immediate release, the Court would order a bond hearing to allow Respondents to make their discretionary decision. Therefore, the Court will order that Respondents hold a bond hearing within **seven (7) days** of the entry of this order. In the alternative, as to Petitioner Santos Ramirez,

13

Respondents may release him immediately on the bond previously imposed in lieu of holding another bond hearing.[3]

Petitioners assert that in any bond hearing the Court should order Respondents to flip the burden and require Respondents to show that detention is necessary to prevent flight or danger to the community by clear and convincing evidence. Doc. 14 at 14. Petitioners summarily cite to two district court cases, and do not explain or analyze the issue to show that the Court should shift the burden to Respondents at the bond hearing. *Id.* Thus, this issue is not properly before the Court, and the Court declines to address it.

To be sure, federal district courts have broad equitable powers in ordering habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). A federal court is vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus.*" *Hilton v. Braunskill,* 481 U.S. 770, 775, 107 S.Ct. 2113, 2118, 95 L.Ed.2d 724 (1987) (citation omitted). In issuing a writ of habeas corpus, a federal court has the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243. In this case, because the shifting burden of proof issue has not been properly presented, the Court exercises its discretion and declines to effectively dictate the result of Respondents' discretionary decision.

**IV.    This opinion and the judgment should not be construed as addressing detention under § 1231, if that provision becomes applicable.**

---

[3] As explained above, the immigration court concluded it lacked jurisdiction to release Petitioner Santos Ramirez on bond, but in the alternative, found that if it had authority or jurisdiction, it would release him on $10,000 bond as he is not a flight risk or danger to the community. Doc. 22 at 2.

The Petition presented the Court with a narrow issue, whether Petitioners' detention *pending a decision on removal* is governed by § 1225 or § 1226. Since the filing of the Petition, Petitioner Salazar Gonzalez was ordered removed, but the time to appeal that decision remains pending. Doc. 22 at 2. Once an order of removal has become final, the authority governing a noncitizen's detention shifts to another statutory provision, 8 U.S.C. § 1231(a)(2). *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022) ("After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day removal period, during which the Government "shall" detain the noncitizen.") (citing 8 U.S.C. §§ 1231(a)(1), (2)).

Section 1231 governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)–(6). In general, when a noncitizen is ordered removed, the Attorney General shall remove them within 90 days, known as the "removal period." § 1231(a)(1)(A). The "removal period" begins once a noncitizen's removal order "becomes administratively final," § 1231(a)(1)(B), meaning the order has been affirmed by the BIA or the time for seeking review has expired, 8 U.S.C. § 1101(a)(47)(B). *Riley v. Bondi*, 606 U.S. 259, 267 (2025) ("An order of removal becomes final at the earlier of two points: (1) 'a determination by the [BIA] affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to" petition the BIA for review of the order.') (citation omitted). During the removal period, detention is mandatory. § 1231(a)(2).

Here, no party has asserted that the Petition is moot or that the Court's lacks jurisdiction to rule on the Petition. At issue in the Petition was whether §§ 1225 or 1226 applied to Petitioners' detention pending a decision on removal. At the time of the entry of this opinion, it appears that any order of removal as to Petitioner Salazar Gonzalez has not become final, as the time to appeal

15

has not yet expired. The Court ordered the parties to alert the Court whether any immigration proceedings would affect the Court's ruling. Therefore, as of the entry of this order, the Court retains the ability to order the relief requested in the Petition, *i.e.*, to determine whether §§ 1225 or 1226 applies to their detention pending a decision on removal. However, no party has briefed the issue of detention under § 1231, and detention under § 1231 is not at issue in the Petition. The Court's order and judgment should not be construed to opine on whether or when in the future Petitioners may be detained under § 1231.

V. **The Court need not rule on Petitioners' remaining claims.**

In addition to requesting habeas relief, Petitioners also asserted that their detention violates due process and requested that the Court declare their detention unlawful. Because the Court will grant habeas relief, the Court need address their other claims or enter a declaration. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative."); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim).

VI. **Attorney's Costs and Fees under the EAJA.**

Finally, Petitioners request that the Court award attorney's fees and costs under the Equal Access to Justice Act ("EAJA"). Pet. at 16. Considering recent Tenth Circuit precedent and the relevant procedure, the Court finds that it may consider Petitioner's request for attorney's fees and costs provided that Petitioner follows proper EAJA procedure.

> The EAJA provides for the following procedure:
>
> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Tenth Circuit recently held that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1159, 1166 (10th Cir. 2025).

A fee award is required if (1) the petitioner prevails, (2) the Government's position was not "substantially justified," and (3) there are no special circumstances rendering an award of fees unjust. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting § 2412(d)(1)(A)). While fees are authorized, the EAJA requires that Petitioner, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses," and an allegation demonstrating that "the position of the United States was not substantially justified." § 2412(d)(1)(A), (B). Upon filing this application, the Government must justify its position in any underlying proceedings and district court litigation. *See Hackett*, 475 F.3d at 1170.

Since the Court grants Petitioners habeas relief, should Petitioners continue to pursue costs and fees, Petitioners are instructed to file an EAJA application following the appropriate procedure.

## CONCLUSION

The Court concludes that Petitioners' detention pending a decision on whether they should be removed from the United States is governed by § 1226(a) as opposed to § 1225(b)(2)(A). Accordingly, the Petition (Doc. 1) is granted in part. Respondents are directed to arrange individualized bond hearings pursuant to § 1226(a) for Petitioners before an immigration judge within **seven (7) days** of the entry of this Order. **Respondents shall not deny Petitioners bond**

17

**on the basis that § 1225(b)(2)(A) requires mandatory detention.** However, the Court makes no determination as to whether or when in the future § 1231 applies to their detention, as it was not briefed or raised in the Petition or in the Motion to Dismiss. The parties are ordered to file a status report within **ten days** of the entry of this order. The Court will enter a separate judgment.[4]

**IT IS THEREFORE ORDERED** that Petitioners' Petition (Doc. 1) is hereby **GRANTED in part** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Respondents' Motion to Dismiss (Doc. 10) is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioners' Motion for Hearing (Doc. 23) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Respondents shall provide a bond hearing before an immigration judge for each Petitioner pursuant to § 1226(a), as opposed to § 1225(b)(2)(A), within **seven (7) days** of the entry of this order, provided that the Court makes no determination whether or when in the future § 1231 detention provisions may apply.[5]

**IT IS FINALLY ORDERED** that the parties are directed to file a joint status report within **ten (10) days** of the entry of this order.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

---

[4] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (explaining that district court has authority to enforce its habeas judgment).

[5] As to Petitioner Santos Ramirez, Respondents may release him on the bond imposed in the alternative by the immigration court, in lieu of holding another bond hearing.